For plaintiff: Jordan & Clifton, Oklahoma City, Okla.

For defendant: Looney, Watts, Ross, Looney & Smith, Oklahoma City, Okla.

**UNITED STATES to Use of JOE A. REEME CO.**

v.

**MAXSON et al.**

**No. 6014.**

United States District Court, W. D. Oklahoma.

June 28, 1954.

WALLACE, District Judge.

The plaintiff, The Joe A. Reeme Company, a corporation, brings this action under the Miller Act[1] to recover $765.-69, plus interest, for alleged "extra" work performed by plaintiff in the carrying out of a painting subcontract dealing with the rehabilitation and restoration of an installation at Tinker Air Force Base, Oklahoma.[2]

The evidence indicates that the plaintiff agreed by way of subcontract with defendants, Maxson & Lawson, to furnish all materials and services necessary to fully perform the obligations contained in Items 12 to 16 of the Prime Contract between Maxson & Lawson and the Government. These items did not specifically mention that any painting

1. 40 U.S.C.A. § 270b. In addition to suing the defendants William E. Maxson and Lester H. Lawson, Individuals d/b/a Maxson & Lawson of Oklahoma City, Oklahoma, plaintiff has joined the labor and materials surety, United Pacific Insurance Co. of Tacoma, Washington, a corporation.

2. The prime contract may be generally described as: Tinker Air Force Base, Rehabilitation and Restoration of Building Number 210, Project OC–59–53, Contract No. AF 34(601)–566.

was required in the office area of the building in question, but did set forth the approximate number of square feet of painting required.[3] On May 7, 1953, after plaintiff had completed what it deemed to be the responsibilities dictated by the contract, Maxson & Lawson requested that plaintiff paint the office area in said building and advised plaintiff that such area came within the purview of the contract.[4] Immediately thereafter, the plaintiff wrote a letter to said defendants and advised them that the office area was not included in the contract, but that the plaintiff would complete such painting and consider same as "extra" work.[5]

After careful consideration the Court has concluded that the office area in question was within the contemplation of the contracting parties and was covered both in the prime contract and the subcontract. Although the office area as such was not specifically mentioned all parties understood that the installation in question was being rehabilitated and restored for Government use; and were further advised of the approximate number of square feet of painting involved. Omitting Item No. 14, which dealt with a lump sum item rather than an estimate per square foot, the contract clearly indicated that the Government was requesting that some 156,000 square feet of painting be done and the bid was submitted on such basis. The work the plaintiff did prior to painting the office area, again omitting Item No. 14, only totalled some 93,000 square feet, about 63,000 square feet less than the combined estimate contained in Items 12, 13, 15 and 16. It appears certain to the Court that the office area was covered by the

3. For example Item No. 12 provided: "Furnish labor and material for interior cleaning and spray painting of concrete and celotex wall area, industrial steel window sash and frames, ladders, railings twenty foot steel columns doors, frames and fire doors with two coats of gloss oil base paint. Lower five foot wainscote to be 'medium-green' gloss enamel No. 11, and the remainder of the wall to be 'light-green' (white tinted with green to approved tint). Units: Approximately 93,150 square feet".

4. On May 5, 1953 the prime contractor wrote the plaintiff: "We are enclosing the 'List of Discrepancies', Building No. 210, Project No. OC–59–53, Rehabilitation and Restoration, Building 210. This is a copy which was sent to us from Tinker Air Force Base on April 30, 1953." These discrepancies were itemized as follows: "*The square footage completed to date as listed by the Engineers:* Item No. 12—52,745 Square Feet (;) Item No. 13—15,884 Square Feet (;) Item No. 14—Lump Sum Item (;) Item No. 15—13,917 Square Feet (;) Item No. 16—10,881 Square Feet (.) *Your contract* with us calls for the following: Item No. 12—93,150 Square Feet (;) Item No. 13—20,125 Square Feet (;) Item No. 14—Lump Sum Item (;) Item No. 15–19,500 Square Feet (;) Item No. 16—14,060 Square Feet (.)"

The prime contractor's May 7th letter provided: "This letter you have requested from us regarding painting in building 210. You were to paint the office and toilets in building 210 which is in accordance with the specifications and the square feet that are specified in plans and bid items. Paint all walls down stairs with light green. Wainscote to be painted dark green (approx. four foot and six inches from floor line) inside of offices and closets. Doors and trim to be painted dark green. Toilet partitions to be painted light green, no glazed tile to be painted in toilet rooms. Doors and trim to be painted dark green. All doors and window trim is to be painted upstairs and down-stairs in building 210. All piping and metal satairs (sic), hand rails, pipe insulation hangers, conduit, ducts are to be painted as specified in specifications and bid items, of contract AF 34 (601)566 Building 210 Tinker Field, Oklahoma City, Oklahoma. All items mentioned above are contained in paint items of this contract AF 34(601)566."

5. Plaintiff's letter stated: "We are writing this letter in further reference to your letter of May 7, 1953 regarding the office area, Bldg. No. 210, Tinker Air Force Base. We wish to further advise that our contract with you and the contract items mentioned along with the plans, of which our contract with you calls for, does not include this office area. Therefore, this is to notify that we are proceeding with this work in accordance with your letter, same to be executed under protest and considered as an extra to our contract. If you do not desire this, please notify."

prime contract as well as the subcontract and that the plaintiff is not entitled to additional money on the theory that the office area painting constituted "extra" work not covered by the contract.

Due to the view the Court holds it is unnecessary to discuss whether or not the plaintiff would be entitled to recover for actual "extra" work done where such work was not requested in writing.

Counsel should submit a journal entry which conforms with this memorandum opinion within ten days.